UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIAN EUGENE SMITH,

    Plaintiff,

v.                                Civil Action No. 13-1088 (RJL)

EXECUTIVE OFFICE FOR UNITED
STATES ATTORNEYS, et al.,

    Defendants.

**FILED**

SEP 2 5 2014

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**MEMORANDUM OPINION**
(September 24, 2014 [Dkt. #24])

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), see 5 U.S.C. § 552, against two components of the United States Department of Justice ("DOJ"): the Executive Office for United States Attorneys ("EOUSA") and the Drug Enforcement Administration ("DEA"). This matter is before the Court on defendants' Motion for Partial Summary Judgment [Dkt. #24] regarding the EOUSA's response to plaintiff's FOIA request (FOIA Reference Number 11-389), the EOUSA's referral of four pages of records to the DEA, and the DEA's response to plaintiff as to these four pages (DEA FOIA Request Numbers 11-00186-PR, 11-00182-P and 10-00636-P).[1] For the reasons discussed below, the motion will be GRANTED.

---

[1] DEA FOIA Request Number 10-00636-P is relevant only because it explains the disposition of the same four pages of records at issue in DEA FOIA Request Numbers 11-00186-PR and 11-00182-P. Plaintiff does not challenge the DEA's response to a fourth request (DEA FOIA

1

## BACKGROUND

### I. Plaintiff's Criminal History

To better understand plaintiff's FOIA requests, it is useful to read the Third Circuit's summary of the facts of his underlying criminal case:

> . . . In the aggregate, the trial testimony revealed that [Juan Carlos] Hinojosa was stopped while transporting cocaine to Pittsburgh from Indiana. After waiving his *Miranda* warnings, Hinojosa admitted to law enforcement that he was transporting cocaine to [plaintiff] in Pittsburgh. The Indiana authorities asked Hinojosa if he would be willing to participate in a controlled delivery of the drugs. Hinojosa agreed.
> 
> Upon arriving in Pittsburgh, Indiana law enforcement met up with agents of the [DEA], who set the scene for the drug transfer at a local gas station. Hinojosa was instructed to sit in the driver's side of his automobile and to telephone [plaintiff]. Law enforcement agents watched from discrete locations. Following instructions, Hinojosa called [plaintiff], informing [plaintiff that] he was ready to deliver the drugs and that they should meet at the gas station, near Station Square. [Plaintiff] told Hinojosa that he would be delayed, and that he had "some issues" in collecting the $17,000.00 [plaintiff] owed Hinojosa from a previous delivery.
> 
> [Plaintiff] ultimately arrived at the location and spoke briefly to Hinojosa, who told him that his "things are in a bag in the trunk." [Plaintiff] went to the trunk of Hinojosa's car and removed the cocaine. He concealed it in a jacket and

---

Request Number 13-00111-P), and this Memorandum Opinion does not address the matter. Even if plaintiff had challenged the DEA's response to DEA FOIA Request Number 13-00111-P, the claim likely would be subject to dismissal for failure to exhaust administrative remedies. *See, e.g., McLaughlin v. Dep't of Justice*, 598 F. Supp. 2d 62, 66 (D.D.C. 2009) (concluding that plaintiff failed to exhaust administrative remedies by not paying duplication fee); *Trueblood v. U.S. Dep't of the Treasury*, 943 F. Supp. 64, 68 (D.D.C. 1996) ("Regardless of whether the plaintiff 'filed' suit before or after receiving a request for payment, the plaintiff has an obligation to pay for the reasonable copying and search fees assessed by the defendant."). The DEA informed plaintiff that the estimated fee for searching three files thought to contain responsive records was $270.00, *see* Mem. of P. & A. in Support of Defs.' Mot. for Partial Summ. J., Decl. of Katherine L. Myrick. ¶ 21, and it does not appear that plaintiff paid the fee or submitted a reformulated request, *see id.* ¶¶ 22-24.

returned to his own car, where he was arrested while
attempting to hide the drugs in the back seat of his vehicle.

*United States v. Smith*, 483 F. App'x 672, 674 (3d Cir.), *cert. denied*, 133 S. Ct. 562 (2012); *see* Compl. [Dkt. #1] ¶¶ 6, 17. Plaintiff and Hinojosa "were charged with intent to distribute and the attempted delivery of five kilograms of cocaine, in violation of 21 U.S.C. §§ 841 and 846." *Smith*, 483 F. App'x at 674; *see* Pl.'s Reply [Dkt. #29] ("Pl.'s Opp'n") at 4. Hinojosa pled guilty; plaintiff "waived his right to a jury trial and was found guilty after a one-day bench trial." *Smith*, 483 F. App'x at 674. He has been "sentenced to 120 months' imprisonment, followed by five years of supervised release." *Id*.

### B. FOIA Request to the EOUSA: FOIA Reference Number 11-389

In relevant part, plaintiff's initial FOIA request to the EOUSA read:

> My Request is to receive Full di[s]covery, which is in the United States Attorney possession for the Western District of Pennsylvania. United States v. Brian E. Smith Cr No: 08-04. Pursuant to . . . the Freedom of Information Act, in conjunction with[] the Privacy Act. Discovery: CD dated 12-7-07, DVD dated 12-9-07, lab report, all officers['] reports, all photographs, chain of custody of drugs, Phone records for Sprint phone, Cricket phone and T-Mobile Phone. Co-defendant arrest report, FBI (302) DEA (6) all Brady and Jenks material[.]

Mem. of P. & A. in Support of Defs.' Mot. for Partial Summ. J. [Dkt. #24] ("Defs.' Mem."), Decl. of David Luczynski [Dkt. #24-1] ("Luczynski Decl."), Ex. A (FOIA/PA Request dated February 1, 2011). In subsequent correspondence, plaintiff narrowed his request and sought two particular items: (1) a lab report in DEA Case No. CM080023, and (2) records pertaining to the chain of custody of drugs allegedly seized from Juan

3

Carlos Hinojosa on December 6, 2007, transported to Pittsburgh, Pennsylvania, and delivered to plaintiff on December 7, 2007. Luczynski Decl., Exs. C-E (Letters from plaintiff to the EOUSA dated February 24, 2011, March 24, 2011, and May 6, 2011, respectively). A search of EOUSA files yielded five pages of records. Luczynski Decl. ¶ 9. The EOUSA withheld one page in full and referred four pages to the DEA, the DOJ component from which they originated. Luczynski Decl. ¶¶ 9, 12, 18. The pages referred to the DEA pertained to a lab report, and at least some of these pages comprised a DEA Form 7, Luczynski Decl. ¶ 12, which is described as "a standardize[d] multi-block form . . . to document the collection of drug evidence seized by DEA agents, drugs evidence in the possession of DEA or suspected drugs forwarded to a DEA laboratory for testing," Defs.' Mem., Decl. of Katherine L. Myrick [Dkt. #24-2] ("Myrick Decl.") ¶ 38.

### C. Referral by the EOUSA to the DEA: DEA FOIA Request Number 11-00186-PR

The EOUSA referred four pages of records to the DEA, Luczynski Decl. ¶ 12, and upon review by DEA staff, it was determined that "the material consisted of two (2) copies of the same DEA Form 7, Report of Drug Property Collected, Purchased or Seized[,] and two (2) copies of the same DEA Form LS-05-010, Laboratory Report," Myrick Decl. ¶ 37, which is described as "a memorandum type form used by DEA laboratories to report the results of forensic testing," *id.* ¶ 38. Because these pages previously had been processed in response to a prior direct request to the DEA, that is, FOIA Request Number 10-00636-P, the DEA took "no further action . . . with regard to these documents." Myrick Decl., Ex. M (Letter to plaintiff from Katherine L. Myrick,

Chief, Freedom of Information/Privacy Act Unit, FOI/Records Management Section, DEA, dated September 12, 2011).

### D. FOIA Request to the USMS: DEA FOIA Request Number 11-00182-P

In December 2010, plaintiff submitted a FOIA request to the United States Marshals Service ("USMS"), Compl. ¶ 9, which in relevant part stated:

> My request is to receive the chain of custody of the drugs that were seized in the state of Indiana, on I-70, the first week of December, 2007.
> The drugs were seized by Detective Jack Martin, with the Wayne County Sheriff[']s Department, Indianapolis Drug Enforcement Agent Cody Dooley and Richmond Police Officer Scott Owens. The drugs were seized and brought to Pittsburgh[,] Pennsylvania for a controlled delivery to Brian E. Smith (Case# CM080023).

Myrick Decl., Ex. H (Freedom of Information Act Request dated December 22, 2010). Because the information plaintiff requested was "under the jurisdiction of the [DEA]," the USMS forwarded the request to the DEA. Myrick Decl., Ex. I (Letter to Katherine L. Myrick, Chief, Freedom of Information Operations Unit, DEA, from William E. Bordley, Associate General Counsel/FOIPA Officer, Office of the General Counsel, USMS, dated January 6, 2011).

DEA staff determined that "the information [plaintiff] was seeking was identical and/or substantially the same investigative information" sought in a previous FOIA request submitted directly to the DEA, that is, FOIA Request Number 10-00636-P. Myrick Decl. ¶ 16; *see id.*, Ex. K (Letter to plaintiff from Katherine L. Myrick dated

February 22, 2011). Accordingly, the DEA took no further action and administratively closed the case. Myrick Decl. ¶ 16.[2]

### E. FOIA Request to the DEA: DEA FOIA Request Number 10-00636-P

As stated above, both plaintiff's direct request to the USMS (DEA FOIA Request Number 11-00182-P) and the records referred by the EOUSA to the DEA (DEA FOIA Request Number 11-00186-PR) were deemed the same or substantially similar to a prior direct request to the DEA (DEA FOIA Request Number 10-00636-P). Myrick Decl., Exs. K, M. That request read:

> My request is to receive information in my drug case in which I was convicted. I was sentence[d] in the West[ern] District of Pennsylvania Case Number 08-04 (D. Ambrose). What I want is any investigative and intelligence files of criminal activities related to illicit drug traffic and drug abuse, and laboratory results, of my criminal case number . . . .

Myrick Decl., Ex. A (Freedom of Information Act Request dated January 2, 2010). In subsequent correspondence, plaintiff provided "additional information that should help [the DEA] retrieve the lab report and the officers arrest reports and the chain of custody." Myrick Decl., Ex. C (Letter to DEA from plaintiff dated February 2, 2011) at 1. The DEA released 50 pages of records to plaintiff, withheld 22 pages in full, referred 1 page to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and referred 6 pages to the Federal Bureau of Investigation ("FBI"). Myrick Decl. ¶¶ 9-11.

---

[2] When "[c]oncerns [arose] as to whether DEA conducted an adequate search for chain-of-custody documents other than the DEA Form 7," counsel represents that "a new search of the file related to plaintiff's criminal case" was needed. Mot. for Partial Summ. J. at 2. The DEA's response to plaintiff's request for "chain of custody" records is the subject of The Drug Enforcement Administration's Supplemental Motion for Summary Judgment [Dkt. #35].

Among the records processed were a DEA Form 7, Myrick Decl. ¶ 39, from which information had been redacted under Exemptions 7(C), 7(E), and 7(F), Myrick Decl. ¶ 40; *see id.*, Ex. T (Report of Drug Property Collected, Purchased or Seized dated December 10, 2007), and a lab report from which information had been redacted under Exemption 7(C), Myrick Decl. ¶ 41; *see id.*, Ex. U (Laboratory Report, Case Number: CM-08-0023). The records referred by the EOUSA to the DEA are "copies of the same DEA Form 7 . . . and . . . the same DEA Form LS-05-010." Myrick Decl. ¶ 37.

## DISCUSSION

### I. Legal Standard

Defendants move for summary judgment with respect to the response of the EOUSA to plaintiff's FOIA request, and the DEA's response to the referral of documents from the EOUSA to the DEA. *See* Mot. for Partial Summ. J. [Dkt. #24] at 1-2.

The Court will grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). In a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)) (alteration in original).

Summary judgment may be based solely on information provided in an agency's supporting affidavits or declarations if they are relatively detailed and when they describe

"the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

## II. The EOUSA's Search for Records Responsive to Plaintiff's FOIA Request

"The adequacy of an agency's search is measured by a standard of reasonableness and is dependent upon the circumstances of the case." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal quotation marks and citations omitted). An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (internal quotation marks and citations omitted). A search need not be exhaustive, *see Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985), and as long as the agency conducts a reasonable search, it matters not that no responsive documents are located, *see Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (stating that "the failure of an agency to turn up one specific document in its search does not alone render a search inadequate").

To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of its search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Id.* at 127. On the other hand, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

Because each United States Attorney's Office maintains case files for matters prosecuted in that district, EOUSA staff forwarded plaintiff's request to the FOIA Contact at the United States Attorney's Office for the Western District of Pennsylvania ("USAP/PAW"). Luczynski Decl. ¶ 11. The EOUSA's declarant described the search process as follows:

> The FOIA Contact began a systematic search for records on Brian Eugene Smith, to determine the location of any and all files relating to him in order to comply with the request. The FOIA Contact searched for records from the case files in that case. The FOIA Contact also sent e-mails to the appropriate Assistant United States Attorney in the Criminal Division to ascertain whether she had any responsive records. In connection with the search for responsive records to Plaintiff's FOIA request, the FOIA Contact used a computer tracking system for the United States Attorney Offices, the "LIONS" system. The "LIONS" system is a computer system used by United States Attorneys offices to track cases and to retrieve files pertaining to cases and investigations. By use of the "LIONS" system, the user can access databases which can be used to retrieve the information based on a defendant's name, the USAO number (United States' Attorney's Office internal administrative number), and the district court case

> number. In this case, the FOIA Contact used the LIONS system to attempt to locate records based upon the plaintiff's name. Documents responsive to plaintiff's FOIA request have been located in the USAO/PAW.

Luczynski Decl. ¶ 11. The search of records maintained in the EOUSA's Criminal Case File System yielded "no records . . . relating to the chain of custody of the seized drugs [with] the possible exception of the DEA Form 7," which the EOUSA referred to the DEA for processing. Luczynski Decl. ¶ 12. The search also yielded "a single page with handwritten text and numbers." Luczynski Decl. ¶ 17. No other records systems or locations within the USAO/PAW maintained records or files pertaining to plaintiff's criminal case. Luczynski Decl. ¶ 13.

Plaintiff's opposition to the EOUSA's search mentions only to its failure to locate records about "the CHAIN OF THE CUSTODY of drugs seized from Juan Carlos Hinojosa in Richmond, Indiana that were transported to Pittsburgh, Pennsylvania." Pl.'s Opp'n at 1; *see id.* at 2. At most, plaintiff speculates that the EOUSA possesses such records, but mere speculation as to the existence of responsive records does not undermine the EOUSA's showing. *See Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994). Plaintiff raises no objection to the scope or method of the EOUSA's search, and based on the declarant's description of the search, the Court concludes that the search was reasonably calculated to locate records responsive to FOIA Reference Number 11-389.

## III. Referral of Records to the DEA

An agency "cannot simply refuse to act on the ground that the documents originated elsewhere." *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983). The FOIA contemplates "consultation . . . with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein." 5 U.S.C. § 552(a)(6)(B)(iii)(III). It also permits "outright referral" of records to another agency or component. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1118 (D.C. Cir. 2007); *see Peralta v. U.S. Attorney's Office*, 136 F.3d 169, 175-76 (D.C. Cir. 1998). A referral runs afoul of the FOIA only if it amounts to an improper withholding of agency records, that is, "if its net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them." *McGehee*, 697 F.3d at 1110.

Here, on August 31, 2011, the EOUSA referred four pages of records to the DEA, Luczynski Decl. ¶ 9, and the DEA responded to plaintiff on September 12, 2011, Myrick Decl. ¶ 18. The DEA did not release any records, however, because it had "determined that the . . . pages have been previously processed" in response to an earlier request. Myrick Decl., Ex. M. The Court concludes that the EOUSA's decision to refer records to the DEA was appropriate, and that the referral neither significantly impaired plaintiff's ability to retain records nor significantly increased the length of time plaintiff awaited a response to his request. *See Inst. for Policy Studies v. CIA*, 885 F. Supp. 2d 120, 142 (D.D.C. 2012) (approving referral of records to agencies where they originated for their direct response to requester).

**IV. Exemption 5**

The single page processed by the EOUSA contained "handwritten case citations and what appear[ed] to be a column of numbers in arithmetic format." Luczynski Decl. ¶ 18. Although it was "unclear what the writing represents," the declarant concluded that the page could have been "categorized as non-responsive" to plaintiff's FOIA request because it neither contained lab report information nor pertained to a chain of custody of drugs. Luczynski Decl. ¶ 19. However, because the page contained "nothing more than handwritten material" that appeared to have been "created by an attorney," the EOUSA withheld the page in full under Exemption 5 as attorney work product. Luczynski Decl. ¶ 18.

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not available in discovery, it may be withheld from FOIA requesters." *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996) (internal quotation marks omitted).

The attorney work product privilege protects material gathered and memoranda prepared by an attorney in anticipation of litigation, *see Hickman v. Taylor*, 329 U.S. 495 (1947), and records may be withheld as attorney work product if they contain the "mental impressions, conclusions, opinions or legal theories of an attorney" and were "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3); *see Miller v. U.S. Dep't of Justice*,

562 F. Supp. 2d 82, 115 (D.D.C. 2008) (concluding that documents which "reflect such matters as trial preparation, trial strategy, interpretation, personal evaluations and opinions pertinent to [plaintiff's] criminal case" qualify as attorney work product under Exemption 5 (internal quotation marks omitted)); *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 7-8 (D.D.C. 2000) (stating that the attorney work product privilege "covers factual materials prepared in anticipation of litigation, as well as mental impressions, conclusions, opinions, and legal theories").

Neither defendant's motion for partial summary judgment nor plaintiff's opposition mentions FOIA Exemption 5 in connection with the one page located in response to plaintiff's FOIA request to the EOUSA. Arguably the page is not responsive to plaintiff's FOIA request. Nevertheless, the EOUSA's declarant demonstrates that the all the handwritten case citations and numbers on the page were made by an attorney. Insofar as the record was located in a criminal case file associated with plaintiff, it is reasonable to conclude that the notes were made in anticipation of or in connection with the prosecution of plaintiff's criminal case. The Court concludes that the EOUSA properly withheld the document in full under Exemption 5 as attorney work product.

## V.  Exemptions 7(C) and 7(E)

### A.  Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982). "To show that . . . documents were compiled for law enforcement purposes, the [agency] need only

establish a rational nexus between [an] investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

The DEA's declarant explains that the agency's "investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801[] *et seq.*," which authorizes "the investigation of incidences involving the trafficking in controlled substances, dangerous drugs and precursor chemicals and the violators who operate at interstate and international levels," and the seizure and forfeiture of assets "derived from, traceable to, or intended to be used for illicit drug trafficking." Myrick Decl. ¶ 42. The relevant records, she states, "are criminal investigative records . . . contained in investigative case files maintained in IRFS," Myrick Decl. ¶ 43, or the DEA Investigative Reporting and Filing System, Myrick Decl. ¶ 27. The declarant explains that the records responsive to plaintiff's FOIA requests "were compiled during criminal law enforcement investigations of the plaintiff and several third-parties." Myrick Decl. ¶ 43. The declarant easily makes the requisite showing that the responsive DEA records are law enforcement records for purposes of Exemption 7.

**B.   Exemption 7(C)**

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). "In deciding whether the release of particular information constitutes an unwarranted invasion of privacy under Exemption 7(C), [the

Court] must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect." *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) (internal quotation marks omitted) (alteration in original); *Beck v. U.S. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). The privacy interest at stake belongs to the individual, not the government agency, *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). When balancing the private interest against the public interest in disclosure, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773); *see also Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007). It is a FOIA requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant. *See Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

The DEA Form 7 and lab report "contain names and other identifying information which would reveal the identity of and disclose personal information about . . . individuals who were involved or associated with plaintiff or with a law enforcement investigation." Myrick Decl. ¶ 44. For this reason, the DEA withholds this information under Exemption 7(C). *See generally* Myrick Decl. ¶¶ 40-48. Specifically, on DEA Form 7, "the name of and information related to a third-party, and the name of a task

15

force office and a DEA special agent" in Block 23, Remarks and "the names and signatures of a task force office[r], a DEA special agent and a DEA staff member" in Blocks 24, 24a, 25, 25a, 34 and 34a are redacted and withheld pursuant to Exemptions 7(C) and 7(F). Myrick Decl. ¶ 40. Similarly, from the "Remarks" section of the lab report, the DEA withholds the names the names and signatures of DEA Special Agents and laboratory staff personnel, the names of a task force office, and the names of other law enforcement personnel and DEA employees. Myrick Decl. ¶ 41.

With respect to DEA Special Agents and other law enforcement officers, the declarant explains that they "were assigned to handle tasks relating to the official investigation [of] the criminal activities of the plaintiff and other individuals," and that "[t]hey were, and possibly still are, in positions of access to information regarding official law enforcement investigations." Myrick Decl. ¶ 49. Disclosure of their identities could render them "targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations." Myrick Decl. ¶ 49. Disclosure of the identities of the other third parties, too, "would place [them] in a position that they may suffer undue invasions of privacy [and] harassment from disclosure of their identities in the context of a criminal law enforcement investigatory investigation." Myrick Decl. ¶ 48. The declarant states that release of information about these third parties "can have a potentially stigmatizing or embarrassing effect on [them] and cause them to be subjected to unnecessary public scrutiny and scorn." Myrick Decl. ¶ 46. Plaintiff does not demonstrate, and the DEA does not identify, "any . . . cognizable public interest" in disclosure of this third-party information, Myrick Decl. ¶ 45, such that

the privacy interests of these individuals prevail, see Myrick Decl. ¶¶ 45, 49. The Court concurs.

"[N]ondisclosure of names or other information identifying individuals appearing in law enforcement records" is routinely upheld. Schrecker v. U.S. Dep't of Justice, 349 F.3d 657, 661 (D.C. Cir. 2003); see, e.g., SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1206 (D.C. Cir. 1991) (holding "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure"). The DEA's decision to withhold this third-party information from the responsive records is proper.[3]

## C. Exemption 7(E) [4]

The DEA withholds from the DEA Form 7 a G-DEP identifier under Exemption 7(E). Myrick Decl. ¶ 40. "The G-DEP is part of [the] DEA's internal system of identifying information and individuals in furtherance of [its] enforcement responsibilities" and the codes "reflect procedures prescribed by the DEA Agents Manual." Myrick Decl. ¶ 52. A G-DEP code is assigned to a case when a case file is opened, and it "indicate[s] the classification of the violator(s), the types and amount of

---

[3] The DEA withholds the "names of DEA Special Agents and state/local law enforcement officers and support personnel," Myrick Decl. ¶ 56, under Exemption 7(C) in conjunction with Exemption 7(F), which "protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual," 5 U.S.C. § 552(b)(7)(F). Because the same information is found to be protected under Exemption 7(C), the Court need not consider Exemption 7(F) separately. See Roth v. U.S. Dep't of Justice, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

[4] The DEA initially asserted Exemption 2 to withhold a G-DEP code, see Myrick Decl., Ex. T, and now relies on Exemption 7(E) instead. Myrick Decl. ¶ 50.

suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity." Myrick Decl. ¶ 53. If a G-DEP code were released, the declarant explains, violators could "identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings." Myrick Decl. ¶ 55. With this knowledge, "[s]uspects could decode this information and change their pattern of drug trafficking in an effort to respond to what they determined [the] DEA knows about them or avoid detection and apprehension and create excuses for suspected activities." Myrick Decl. ¶ 55. In short, disclosure of a G-DEP code "would . . . thwart theDEA's investigative and law enforcement efforts." Myrick Decl. ¶ 55.

The Court concludes that the DEA properly withheld the G-DEP code under Exemption 7(E). *See Higgins v. U.S. Dep't of Justice*, 919 F. Supp. 2d 131, 150-51 (D.D.C. 2013).

## VI. Segregability

If a record contains some information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999). A court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

The DEA's declarant avers that "[o]nly the names of DEA special agents, other law enforcement personnel and a G-DEP identifier were withheld." Myrick Decl. ¶ 62. Based on the declaration and the Court's review of the two redacted pages of records, the Court concludes that all reasonably segregable information has been released to plaintiff.

## CONCLUSION

Defendants demonstrate that the EOUSA conducted an adequate search for records responsive to plaintiff's FOIA request, that it properly referred records to the DEA, and that it properly withheld a one-page document in full under FOIA Exemption 5. In addition, defendants demonstrate that the DEA properly withheld information from the DEA Form 7 and lab report under Exemptions 7(C) and 7(E) and that it released all reasonably segregable information. Accordingly, the Court will GRANT the Motion for Partial Summary Judgment in part as to the EOUSA and the DEA with respect to the records referred to it by the EOUSA. An Order is issued separately.

RICHARD J. LEON
United States District Judge